## ART METAL CONST. CO. for Use of Mc-CLOSKEY & CO., Inc., v. LEHIGH STRUCTURAL STEEL CO.

### No. 7492.

Circuit Court of Appeals, Third Circuit.

Nov. 27, 1940.

Edward J. Mingey and Edward P. Smith, both of Philadelphia, Pa., for appellant.

Charles H. Weidner and Stevens & Lee, all of Reading, Pa., for appellee.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

---

[6] D.C., 295 F. 328, 331.

GOODRICH, Circuit Judge.

■ This is an appeal from a judgment entered upon the pleadings on a motion by the defendant, Rule 12(c), Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In considering such a motion the facts alleged by the plaintiff must be taken to be true and the inquiry is whether upon those facts plaintiff has stated a cause of action. Ulen Contracting Corp. v. Tri-County Electric Coop., D.C.Mich.1940, 1 F.R.D. 284. From the plaintiff's complaint the following facts appear:

McCloskey & Co. was the general contractor for the erection of a new court house in Berks County, Pennsylvania. Bauman Iron Works, Inc., was awarded a sub-contract by McCloskey & Co. for the structural steel, ornamental iron, architectural bronze and wrought-iron and cast aluminum for the price of $246,000. Subsequently, Bauman sub-contracted the structural steel work to the Lehigh Structural Steel Co. for $179,500 and several weeks later sublet to the Art Metal Construction Co., plaintiff and appellant herein, the architectural bronze and wrought-iron work for the finally adjusted price of $28,780.70. About one month later Bauman assigned the Mc-Closkey-Bauman contract to Lehigh without the knowledge of McCloskey or Art Metal. Art Metal performed its work to the satisfaction of the architects. Bauman received from McCloskey approximately $208,000 which it turned over to Lehigh. Bauman has become insolvent and a receiver has been appointed for it. Art Metal received some payments from Bauman during the progress of the work and received a small dividend from the receiver. Of the balance of over $9,000 still due it under the contract, Art Metal received a little more than half from McCloskey & Co. directly. It brought this suit against Lehigh to recover that balance for itself and McCloskey.

■ We think that the court below erred in entering judgment for the defendant. The contract between McCloskey and the County provided that "The contractor agrees to bind every sub-contractor and every sub-contractor agrees to be bound by the items of the Agreement, the General Conditions, the Drawings and Specifications so far as applicable to his work. * * *" The contract further provided that all sub-contractors agreed to be bound to the contractor by the terms of the agreement, the general conditions, the drawings and specifications so far as applicable to their work and to assume toward him all of the obligations and responsibilities which the contractor assumed toward the County. One of the obligations specifically undertaken by the contractor with the County was to pay sub-contractors.[1]

The McCloskey-Bauman contract specifically stated that it was made subject to McCloskey's agreement with the County which was incorporated by reference into the McCloskey-Bauman contract. At this point it can readily be seen that under the McCloskey-Bauman contract there arose a duty on the part of Bauman to pay sub-contractors and that, therefore, Art Metal was a third party beneficiary of that contract. That was the contract which was assigned to Lehigh. The assignment was a full and complete one, transferring to the assignee "all the right, title and interest of the said Assignor in the aforesaid contract. * * *" Further, as showing the unqualified nature of the assignee's obligation, the latter undertook, as part of the consideration, "performance of the work required of the assignor".

---

[1] The Contractor agrees:

"(d) To be bound to the Sub-contractor by all the obligations that the County assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof affording remedies and redress to the Contractor from the County.

"(e) To pay the Sub-contractor, upon the issuance of certificates, the amount allowed to the Contractor on account of the Sub-contractor's work to the extent of the Sub-contractor's interest therein.

"(f) To pay the Sub-contractor, upon the issuance of certificates, if issued otherwise than as in (e), so that at all times his total payments shall be as large in proportion to the value of the work done by him as the total certified to the Contractor is to the value of the work done by him.

"(g) To pay the Sub-contractor to such extent as may be provided by the Contract Documents or the Sub-contract, if either of these provide for earlier or larger payments than the above.

"(h) To pay the Sub-contractor on demand for his work or materials as far as executed and fixed in place, less the retained percentage, at the time the certificate should issue, even though the Architect and Engineer fail to issue it for any cause not the fault of the Sub-contractors."

The Restatement of Contracts, § 164, states:

"(1) Where a party to a bilateral contract which is at the time wholly or partially executory on both sides, purports to assign the whole contract, his action is interpreted, in the absence of circumstances showing a contrary intention, as an assignment of the assignor's rights under the contract and a delegation of the performance of the assignor's duties.

"(2) Acceptance by the assignee of such an assignment is interpreted, in the absence of circumstances showing a contrary intention, as both an assent to become an assignee of the assignor's rights and as a promise to the assignor to assume the performance of the assignor's duties."

See, also, Blue Star Navigation Co. v. Emmons Coal Mining Corp., 1923, 276 Pa. 352, 357, 120 A. 459.

■■ There are no qualifying words in the instrument constituting the assignment and, therefore, under the general rule above expressed Lehigh must be taken to have assumed all of the duties of Bauman under the McCloskey-Bauman contract including the obligation to pay Bauman's sub-contractors among whom was Art Metal. Since the decision of the Supreme Court of Pennsylvania in Commonwealth v. Great American Indemnity Co., 1933, 312 Pa. 183, 167 A. 793, there appears to be no impediment in the law of Pennsylvania to allowing recovery by a third party beneficiary.

The judgment is reversed and the cause is remanded for further proceedings.