GEORGE WARD, PLAINTIFF-RESPONDENT, v. THOMAS SCHOFFERMAN AND DAVID POCHTAR, TRADING AS EXCHANGE MOTOR SALES CO., DEFENDANTS-APPELLANTS.

Submitted October 1, 1946—Decided May 14, 1947.

Before Case, Chief Justice, and Justices Heher and Colie.

For the appellants, *Parsonnet, Weitzman & Oransky* (*Samuel Weilzman,* of counsel).

For the respondent, *Hodes & Hodes* (*Irving L. Hodes,* of counsel).

The opinion of the court was delivered by

Heher, J. The action is for damages by the buyer of an automobile for an alleged breach of warranty by the sellers.

On December 1st, 1944, defendants sold to plaintiff a used 1938 Buick sedan automobile at the ceiling price fixed by the Federal Office of Price Administration, under a written warranty that the vehicle was "in good operating condition," and would "remain in such condition under normal use and service for a period of 30 days after delivery, or 1,000 miles, whichever may first occur." Defendants also agreed, if the car were "delivered during the above period" to their place of business, "to make with reasonable promptness any repairs or replacements, which may be necessary to its good operating condition in accordance with normal use and service, at a cost to the purchaser * * * of not more than 50% of the normal charge for such repairs and replacements," which "normal charge is not in excess of OPA ceilings."

The jury empaneled to try the issue returned a verdict for plaintiff for the full purchase price; and defendants appeal from the consequent judgment.

Error is assigned upon Judge Hartshorne's rulings denying defendants' motions for a nonsuit and a directed verdict, for want of evidence, so it is said, that the car was not in good operating condition at the time of the sale, and so a failure

of proof of breach of the warranty. The point is not well taken.

There was evidence tending to show delivery of the automobile on the day of its purchase seemingly in operating condition. But on the following day the motor "wouldn't start;" and there was a recurrence of this on four or five occasions during the first two and a half weeks of plaintiff's possession, notwithstanding defendants' efforts to place the vehicle in running condition. Finally, on the ensuing December 19th, when the motor again failed, defendants undertook to make repairs and they had possession of the vehicle for that purpose until the following May, when they notified plaintiff that the work had been completed and he would be charged with 50% of the cost, or $120. This, plaintiff refused to pay. It is conceded that the car's mileage while in plaintiff's possession was much less than 1,000.

It was plaintiff's right in these circumstances to rescind the sale, return the automobile to the sellers, and recover the purchase price. *R. S.* 46:30–75.

Plaintiff testified on cross-examination that the car motor "was running perfect" immediately prior to the purchase; and the essence of defendants' argument is that the vehicle "was in good operating condition when sold," and there is no proof that the subsequently appearing "mechanical defects in fact existed at the time of the sale." But it was plainly inferable from the proofs that these mechanical deficiencies pre-existed the sale, and therefore the car was not "in good operating condition" at the time of the sale within the intendment of the warranty. And it was for the jury to determine whether that was the preponderant inference. The warranty plainly contemplated mechanical sufficiency for continuous operation, or substantially that, at least for 1,000 miles. That is obviously the sense of the term "good operating condition." The sellers warranted that the car would "remain" in that condition, "under normal use and service," for a period of 30 days, or 1,000 miles. There being evidence to indicate a breach of the warranty, the motions to take the case from the jury were properly denied.

The judgment is affirmed, with costs.