[Civ. No. 16678. Second Dist., Div. One. Dec. 23, 1948.]

HANDIA E. ADAMS, Appellant, v. GRETCHEN M. HEINSCH, Respondent.

Alfred F. MacDonald for Appellant.

Gretchen M. Heinsch, in pro. per., for Respondent.

DORAN, J.—According to the findings of fact of the trial court, "Plaintiff, as the new owner of a lot with a 12 room house thereon, at 685 South Berendo Street in Los Angeles, California, on February 11, 1947, entered into a written lease thereof with defendant, whereby the premises were leased to defendant for a term of five years at a total rental of $21,000, payable monthly in installments of $350.00 each, commencing March 1, 1947. It is provided therein that said premises were to be used 'for business or hotel purposes,' or 'any other lawful business or for different lawful businesses and purposes'. The first and last two installments of rent were paid . . . amounting to $1,050.00. As part of the consideration for the lease plaintiff agreed in writing to make certain rehabilitations and improvements, which he proceeded to do at a cost of $3,230.91. Defendant entered into possession upon execution of said lease and proceeded to operate the premises as a rooming house, serving meals, and not as a hotel. Shortly thereafter plaintiff learned for the first time that under the previous owner, the property had been registered with the O. P. A. at $100.00 per month for use as housing accommodation, and that such ceiling was attached to the premises at the time plaintiff purchased."

On May 8, 1947, plaintiff, on advice of an attorney, registered the property with the O. P. A. and on May 27, 1947, a maximum rental of $135 per month was fixed. Thereafter, on June 4, 1947, plaintiff served on defendant a notice of rescisson of the lease contract, based upon alleged mistake and failure of consideration. The complaint subsequently filed, demanded possession of the premises with reasonable rental of $350 per month, and alleged mistake of fact, mutual mistake of law, failure of consideration, and illegality of contract.

The trial court found that there was no proof of any of the grounds of rescission, and that plaintiff's ignorance of the registered rental status of the property "was due to his inexcusable neglect of a legal duty. He did not attempt to ascertain the house's rental status either before he bought it or before he executed the lease." It was further found that the defendant cross-complainant was entitled to recover from plaintiff a total rental overcharge of $130, together with attorney fees of $200. The present appeal is from the judgment denying plaintiff any relief and in favor of defendant as aforesaid.

It is appellant's contention that "The evidence, without conflict, conclusively shows that the consent of the plaintiff to the execution of the lease was given under mistakes of fact," and that both parties were then acting "under mutual mistakes of law." Plaintiff's testimony was to the effect that the agreed rental of $350 per month was believed to be within the law, and that since the property was leased as an entirety, it did not come within O. P. A. control. In this connection plaintiff stated: "At the time I signed the lease, I did not know that a (rent) registration had previously been entered by the O. P. A."; and "I would not have given my consent to the execution of the lease or paid out the sum of over $3000.00 in fixing up the premises if I had known that the leasing would come under the O. P. A." There is like testimony by the defendant lessee that, "I didn't know at that time, that the O. P. A. regulations covered the leasing of those housing accommodations." However, the defendant "would have signed it just the same," even with knowledge that it was in violation of regulations; "I wanted a house and I would have taken it." Maxine Shaw, a broker who brought the parties together, also testified: "At the time we entered into this lease for business purposes I didn't know that the O. P. A. had anything to do with leasing a hotel or rooming house, or for any business purpose, when the entire building was let." Mrs. Shaw also remarked: "Well, to tell the truth, since this O. P. A. entered my life, I am not really sure of anything."

Also urged as ground for reversal is "The Court's failure to give full effect to plaintiff's claim of failure and illegality of consideration." In reference to this claim the trial court found that "as the alleged failure of consideration is shown to be the result of a lawful act of the O. P. A. under rent regulations reducing the contract rent, it cannot constitute ground for rescission." Appellant's claim of illegality is based upon

section 206(a) of the "Housing and Rent Act of 1947," [61 Stats. 193, 50 U.S.C.A.App. § 1881 et seq.], making it unlawful "to offer, solicit, accept, or receive any rent . . . in excess of the maximum rent prescribed." It is to be noted, however, that Regulation, section 1(c), issued on July 1, 1947, provides that "The provisions of any lease . . . shall remain in force . . . except insofar as those provisions are inconsistent with this regulation." The trial court found no illegality of contract or of consideration. The court further found that the plaintiff's "acts of overcharge and collection of overcharge were not wilful and he did not fail to take practicable precautions against the occurrence of the violation," but that "His broker and agent, upon whom he relied, failed to make proper inquiries and report to the plaintiff the fact of the prior rental registration."

The present situation is not unlike that in *Hannah* v. *Steinman*, 159 Cal. 142, 146 [112 P. 1094], where the court said: "We deem it unimportant whether the alleged mistake in this case be held to be a mistake of fact or one of law. The mistake was the belief of both parties that the lot was not within the limits fixed by ordinance wherein it was unlawful . . . to construct a wooden building. . . . Unconscious ignorance of a fact material to a contract or belief in the present existence of a thing material to the contract constitutes a mistake of fact (Civ. Code, sec. 1577), and misapprehension of the law by all parties, all supposing that they know and understand it, and all making substantially the same mistake as to the law, constitutes a mistake of law. (Civ. Code, sec. 1578.) Upon the facts of this case there was a mutual mistake either of fact or of law." Under Civil Code, section 1689, a party to a contract may rescind the same, "If the consent of the party rescinding . . . was given by mistake."

That the lease here under consideration was likewise executed under a mistaken belief that the transaction was legal and not covered by O. P. A. rental regulations, cannot be doubted. "My understanding," plaintiff testified, was "that it was all right." The defendant, Mrs. Heinsch, stated: "I didn't know at that time, that the O. P. A. regulations covered the leasing of those housing accommodations." There is, indeed, no substantial evidence to the contrary. That the matter of rent and O. P. A. control was a vitally material matter is certain. Nor is there room for doubt that had the true facts been known, the lease in its present form would not have been consented to by the plaintiff.

The trial court's finding that appellant's disagreeable situation "was due to his inexcusable neglect of a legal duty" in not ascertaining the exact rental status of the property before executing the lease, is justified neither by way of fact nor of law. And to deny rescission would inequitably enrich the defendant and unwarrantably penalize the plaintiff for a mistake which, in the language of appellant's brief, "could readily be made by anyone."

Both parties to the lease were apparently proceeding upon the assumption that since the leasing did not come within the so-called "Hotel and Rooming House Regulations," this meant that the matter of rental for the property leased as an entirety, was entirely outside any O. P. A. control. This, of course, was not true, for, while the matter was admittedly outside the purview of the hotel and rooming house part of the voluminous regulations, it was nevertheless governed by the more general "Housing Regulations."

That the situation was at least highly complicated if not baffling to both lay and legal minds is evidenced by the trial court's remarks: "This is just an illustration, visited upon me, of the very persistent and consistent methods of the O.P.A. resulting in utter confusion." At another point in the trial the judge said: "I am not surprised at all that these witnesses should take the stand, and say they didn't know that this property would come under the O. P. A. at all." As stated in appellant's brief, it did not enter anyone's mind "that there was in existence a wholly different set of conflicting regulations which would bring the operation of the premises under the jurisdiction of the O. P. A."

The statement made in the trial court's memorandum of decision, that "a rescission herein would be of no benefit to the plaintiff. He could in no event lease the premises for more than $135.00," is manifestly incorrect. This assumption, as appellant's brief points out, overlooks other effects of a rescission which might be highly beneficial to the plaintiff. For example, "with the property freed from the obligations of a 5 year lease, the plaintiff could immediately sell the same, and thus recover the money he paid out on his investment." And, as hereinbefore indicated, to deny a rescission in the face of the record showing an innocent misunderstanding of a highly complicated legal matter and a mutually unknown factual situation, amounts to a violation of fundamental equitable principles.

As appellant's brief avers, there is nothing in the rent control regulations which prevents or attempts to prevent the state courts from adjudging a rescission of a lease contract on the ground of mistake, whether one of fact or of law. That such a rescission is here required, seems plain. In view of the decision reached it becomes unnecessary to discuss appellant's other contentions.

The judgment is reversed with directions to enter judgment in favor of the plaintiff, rescinding the lease in question; and denying the defendant the relief prayed for in the cross-complaint.

York, P. J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 21, 1949. Traynor, J., voted for a hearing.